1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JS-6

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GONZALES-MCCAULLEY INVESTMENT GROUP, INC., | Case No. CV 13-06877 BRO (JEMx) |
| Plaintiff, | **FINDINGS OF FACT AND CONCUSIONS OF LAW AFTER COURT TRIAL** |
| v. | |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, | |
| Defendant. | |

## I.      <u>INTRODUCTION</u>

Plaintiff Gonzales-McCaulley Investment Group, Inc. ("GMIG") filed this action seeking review of an agency determination by the Department of Veterans Affairs ("VA") denying Plaintiff's application for inclusion in the VA's Vetbiz Vendor Information Pages Program ("VIP Verification Program").  The VIP Verification Program, which was established under the Veterans Benefits, Health Care, and Information Technology Act of 2006, 38 U.S.C. §§ 101 *et seq.*, is part of a broader effort by Congress to provide contracting assistance to and increase contracting opportunities for small businesses owned by veterans or service-disabled veterans, *see* 38 U.S.C. § 8127(a); 48 C.F.R. § 819.7001.

In light of this goal, the VA is charged with keeping a database of small businesses owned and controlled by veterans.  38 U.S.C. § 8127(f).  Businesses must apply to the VIP Verification Program to be included in this database and thus be eligible for the contracting opportunities and assistance provided by the VA.  *See* 38 C.F.R. § 74.1.  The VA's Center for Veterans Enterprise ("CVE") oversees the application (or "verification") process and determines whether businesses qualify for inclusion by following certain ownership and control requirements mandated by 38 C.F.R. §§ 74.1 *et seq.*

The instant dispute arises out of the CVE's denial of Plaintiff's renewed application for inclusion.  Plaintiff claims that it meets the requirements of 38 C.F.R. §§ 74.1 *et seq.*, and that the CVE's refusal to include Plaintiff in the VIP Verification Program constitutes an arbitrary and capricious exercise of its authority.  The central issue in dispute is whether Plaintiff—a business composed of one veteran and one non-veteran—meets the control requirements identified in 38 C.F.R. § 74.4 for inclusion in the program.

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL

## II.   FINDINGS OF FACT[1]

### A.   The Parties

Plaintiff GMIG is a corporation located and operated in Los Angeles, California.  (GMIG-548.)[2]  It is owned solely by Mr. Ollie McCaulley, a service-disabled veteran, and his wife, Aurora Gonzales-McCaulley, a nonveteran.  (GMIG-172.)  Mr. McCaulley owns fifty-two percent of the company, and Ms. Gonzales-McCaulley owns the remaining forty-eight percent.  (GMIG-172.)  In addition to being the sole shareholders of GMIG, Mr. McCaulley and Ms. Gonzales-McCaulley are the only two members of GMIG's board of directors.  (GMIG-154.)  Defendant VA is the federal department tasked with overseeing the VIP Verification Program.

### B.   Plaintiff's 2011 Application

In June 2011, Plaintiff filed an application for inclusion in the VIP Verification Program.  (GMIG-548.)  The CVE denied the application on the basis that Plaintiff did not meet the veteran control requirements defined in 38 C.F.R. Part 74 and 13 C.F.R. § 125.15.  (GMIG-155.)  Specifically, the CVE concluded that Plaintiff's bylaws vested the board of directors with the authority to transact business, that a majority of directors was necessary to constitute a quorum, and that the board acted by majority vote of the directors.  (GMIG-154.)  Because a board with only two directors would require both members to constitute a majority, and because only one of GMIG's two directors is a veteran, the CVE concluded that GMIG failed to meet the minimum control requirement of over-fifty-percent veteran control.  (GMIG-154–55, 157–58.)

---

[1] Any finding of fact which constitutes a conclusion of law is hereby adopted as a conclusion of law.

[2] Factual references will cite primarily to the Certified Administrative Record.  *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("In applying [the arbitrary, capricious, or abuse of discretion standard], the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").  Such references to the administrative record will be identified by their Bates numbering.

1    On July 22, 2011, Plaintiff sent the CVE a request for reconsideration.
2  (GMIG-161.)  Plaintiff argued that, because Mr. McCaulley held fifty-two percent of
3  the shares, and could therefore "hold board meetings and make decisions for 52% of
4  the shareholders," Plaintiff had a veteran with sufficient controlling authority under
5  § 74.4.  (GMIG-162.)  In response to a request for clarification, Plaintiff also sent the
6  CVE documentation verifying that Mr. McCaulley owned fifty-two percent of the
7  company as separate property not subject to division upon marital dissolution.
8  (GMIG-172–75.)

9    After reviewing Plaintiff's clarifying materials, the CVE granted Plaintiff's
10  request for reconsideration and admitted Plaintiff to the VIP Verification Program.
11  (GMIG-176–77.)  Based on the materials Plaintiff sent, the CVE concluded that "[i]n
12  the case of Gonzales-McCaulley, you, the [service-disabled veteran], control 52
13  percent of the stock and therefore, you have sole discretion for determining the
14  direction of the company."  (GMIG-177.)  As a result, the CVE informed Plaintiff
15  that "you have at this time met the eligibility requirements of ownership and control
16  of Gonzales-McCaulley."  (GMIG-177.)  Plaintiff was thus granted a two-year
17  period of eligibility in the VIP Verification Program pursuant to 38 C.F.R. § 74.15.

18    **C.**    **Plaintiff's 2013 Application**

19    In June 2013, the CVE notified Plaintiff that its eligibility was set to expire in
20  the coming months.  (GMIG-549.)  Plaintiff was directed to reapply for verification
21  online, with the note that, "if there have been no changes to the business since the
22  last time the business documents were examined, the company may certify that no
23  changes have taken place.  Renewal for these companies typically takes 7 business
24  days."  (GMIG-549.)  Although Plaintiff had not made any changes to its business
25  since 2011, the CVE contacted Plaintiff in August 2013 with the news that its initial
26  evaluation had revealed issues related to Plaintiff's bylaws that would prevent it
27  from being included in the VIP Verification Program.  (GMIG-517–19.)  Plaintiff
28  responded immediately, referencing the 2011 verification, asserting that neither the

4

regulations nor the facts had changed since then, and maintaining that Mr. McCaulley, as the fifty-two-percent shareholder, exercised sufficient control under the requirements of 38 C.F.R. § 74.4(f).  (GMIG-527.)

Nevertheless, the CVE issued its final determination on August 22, 2013, in which it stated that it "cannot reasonably conclude that the requirements of 38 CFR § 74.4(f) and 38 CFR § 74.4(f)(2)(i) have been satisfied."  (GMIG-535.)  Reading Plaintiff's bylaws to require a majority of directors to constitute a quorum in transacting business, the CVE reasoned that both Mr. McCaulley and Ms. Gonzales-McCaulley (the only two board members) were required to be present to constitute a quorum.  (GMIG-535.)  As a result, "Aurora McCaulley (non-Veteran) is needed in order to form a quorum and she can prevent a quorum by failing to appear for a meeting, giving her negative control."  (GMIG-535.)

### D.      Plaintiff's Appeal of The VA's Denial

On September 18, 2013, Plaintiff formally requested reconsideration of the CVE's determination (GMIG-545–46), and simultaneously filed this action with the Court seeking to set aside the CVE's determination (Dkt. No. 1).  On October 22, 2013, the CVE denied Plaintiff's request for reconsideration.  (GMIG-575–77.) Defendant filed a motion to dismiss Plaintiff's complaint, arguing that the Court lacked subject matter jurisdiction and that Plaintiff's claim was not ripe.  (Dkt. No. 8.)  The Court denied this motion on February 10, 2014.  (Dkt. No. 16.)  The parties then entered mediation in an attempt to reach a settlement, but the attempt was unsuccessful.  (Dkt. No. 40.)  The Court must now therefore decide whether the CVE's determination should be set aside and order Plaintiff to be admitted to the VIP Verification Program.

### III.      CONCLUSIONS OF LAW

### A.      Legal Standard of Review

Under the Administrative Procedure Act, a district court may set aside an agency action that it finds to be "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law."  5 U.S.C. § 706(2)(a); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 414 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  In reviewing an agency determination, however, a court may only consider "the basis of the reasoning in that decision." *Anaheim Mem'l Hosp. v. Shalala*, 130 F.3d 845, 849 (9th Cir. 1997).  The central inquiry is whether the agency "articulate[d] a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.'" *Sierra Pac. Indus. v. Lyng*, 866 F.2d 1099, 1105 (9th Cir. 1989) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

In addition, where review involves an agency's interpretation of its own regulations, that interpretation is entitled to deference under *Auer v. Robbins*, 519 U.S. 452, 461 (1997).  *See Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*, 565 F.3d 545, 557 (9th Cir. 2009) ("Under this standard, we defer to the agency's interpretation of its regulation unless an alternative reading is compelled by the regulation's plain language or by other indications of the agency's intent at the time of the regulation's promulgation." (quoting *Bassiri v. Xerox Corp.*, 463 F.3d 927, 931 (9th Cir. 2006))).

Because the VA, through the CVE, interprets its own regulations in considering applications to the VIP Verification Program under 38 C.F.R. § 74.1 *et seq.*, its interpretations are ordinarily controlling unless they are "plainly erroneous or inconsistent with the regulation."  *Auer*, 519, U.S. at 461.  Plaintiff contends, however, that less deference is warranted because the VA has been inconsistent in its interpretation.  As Plaintiff notes, "[a]n agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view."  *INS v. Cardozo-Fonseca*, 480 U.S. 421, 446 n.30 (1987) (quoting *Watt v. Alaska*, 451 U.S. 249, 273 (1981)).

At first blush, the VA's interpretations of the control requirements of 38 C.F.R. § 74.4(f) do indeed appear inconsistent.  (*Compare* GMIG-177 (2011 letter)

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL

("in accordance with 38 CFR §§ 74.3 and 74.4, CVE finds that you have at this time met the eligibility requirements of ownership and control of Gonzales-McCaulley"), *with* GMIG-535 (2013 letter) ("CVE cannot reasonably conclude that the requirements of 38 CFR § 74.4(f) and 38 CFR § 74.4(f)(2)(i) have been satisfied.").) Nevertheless, it appears that the VA failed to consider the issue of "negative control" in its 2011 reconsideration letter, focusing instead on only Mr. McCaulley's shareholder voting power.  (GMIG-176–77.)  It was primarily the issue of negative control that drove the VA's decision in 2013.  (GMIG-535.)  Plaintiff contends that "it is only logical to conclude that the only thing that has changed is the VA's interpretation of § 74.4(f)."  (Dkt. No. 38 at 10.)  But given the CVE's failure even to mention the issue of negative control in its 2011 letter, the VA's inconsistency was likely the product of a misapplication of its policy, rather than inconsistency in its actual interpretation of its regulations.[3]  The Court need not decide whether *Auer* deference is warranted here, however, as it finds that Defendant's action survive scrutiny under the less stringent "arbitrary and capricious" standard.

### B.    Plaintiff Has Sufficient Veteran Control Under Section 74.4(f)(1)

In denying Plaintiff's 2013 application for re-inclusion in the VIP Verification Program, the CVE relied on its finding that Plaintiff did not satisfy the requirements of 38 C.F.R. Part 74.  (GMIG-535.)  To begin its analysis, the CVE reasoned: "For a corporation to qualify as an SDVOSB, '[o]ne or more . . . service-disabled veterans must control the board of directors of a corporate applicant' and 'provisions for the establishment of a quorum cannot permit non-veteran directors to control the board of directors, directly or indirectly.'"  (GMIG-535 (quoting 38 C.F.R. §§ 74.4(f);

---

[3] Moreover, many courts have recognized that "[a]dministrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider." *Nat'l Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 275 F. Supp. 2d 1136, 1141 (C.D. Cal. 2002) (quoting *Trujillo v. Gen. Electric Co.*, 621 F.2d 1084, 1086 (10th Cir.1980)); *accord Gorbach v. Reno*, 179 F.3d 1111, 1123 & n.16 (9th Cir. 1999) (collecting cases applying this principle), *reh'g granted and opinion withdrawn*, 192 F.3d 1329 (9th Cir. 1999).

74.4(f)(2)(i).)  In doing so, the CVE plainly suggested that Plaintiff had to satisfy the general provision of 74.4(f)—the provision detailing the level of control a veteran must exert over an applicant's board of directors—as well as the requirements of paragraph 74.4(f)(2).  Indeed, later in its analysis, the CVE quoted more extensively from paragraph (f)(2), making it clear that it relied on Plaintiff's failure to meet the requirements of that subsection in denying Plaintiff's application.  (GMIG-535.)

Yet the language of section 74.4(f) makes it equally clear that a company can satisfy the provision's control requirements through either paragraph (f)(1) or paragraph (f)(2).  By its own terms, paragraph (f)(2) applies only "[w]here an applicant or participant does not meet the requirements set forth in paragraph (f)(1)." 38 C.F.R. § 74.4(f)(2).  And as Plaintiff correctly argues in its briefing, the undisputed facts qualify Plaintiff under paragraph (f)(1).  In relevant part, paragraph (f)(1) states that the "CVE will deem veterans or service-disabled veterans to control the board of directors where . . . (ii) A single veteran owns at least 51 percent of all voting stock of an applicant or participant, the individual is on the board of directors and no supermajority voting requirements exist for shareholders to approve corporation actions."  *Id.* § 74.4(f)(1)(ii).  The record demonstrates that Mr. McCaulley, a veteran, owns fifty-two percent of GMIG, that he is on the board of directors, and that GMIG's bylaws for shareholder voting do not have any supermajority requirements.  Plaintiff thus satisfies the requirements outlined in section 74.4(f) dictating the level of control that a veteran must exercise in a qualifying company.

### C.    Plaintiff Was Properly Excluded Based on Negative Control

While the VA misapplies section 74.4(f) in its analysis, its discussion of "negative control" illustrates the essence of the VA's reasoning for denying Plaintiff's application.  Addressing GMIG's bylaws—which require a majority of the directors to establish a quorum for transacting business during a board meeting—and noting the existence of only two board members (one veteran and one non-veteran),

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL

the VA reasoned: "Since a quorum can only be formed with a majority of the directors, both directors are required.  Aurora Gonzales-McCaulley (non-Veteran) is needed in order to form a quorum and she can prevent a quorum by failing to appear for a meeting, giving her negative control."  (GMIG-535; *accord* GMIG-576 (denial of Plaintiff's 2013 request for reconsideration) ("In the initial denial letter, CVE was unable to reasonably conclude that the [service-disabled veteran] controlled GMIG because the bylaws allowed the non-Veteran director to negatively control the concern.").)

VA regulations define "negative control" to include "instances where a minority shareholder has the ability, under the concern's chapter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders."  38 C.F.R. § 74.1.  While GMIG's bylaws permit Mr. McCaulley, as the majority shareholder, to constitute a quorum for shareholder votes, they require a majority of directors to be present in order to conduct any business on behalf of the board.  (GMIG-5, 6.)  Because GMIG has only two directors, either of them could prevent a quorum at a board meeting by failing to appear, as a majority would require both to be present.  The VA is thus correct to say that Ms. Gonzales-McCaulley exercises negative control because she "has the ability, under [GMIG's] by-laws . . . to prevent a quorum or otherwise block action by the board of directors."  38 C.F.R. § 74.1.

In addition, the VA also cites paragraph 74.4(i)(1) as support for its conclusion that Ms. Gonzales-McCaulley's level of control over GMIG was impermissible.  (GMIG-575–76.)  This paragraph dictates that "[n]on-veterans or entities may be found to control or have the power to control" where "[n]on-veterans control the board of directors of the applicant or participant, either directly through majority voting membership, or indirectly, where the by-laws allow non-veterans effectively to prevent a quorum or block actions proposed by the veterans or service-disabled veterans."  38 C.F.R. § 74.4(i)(1).

9

As Plaintiff points out, however, section 74.1 is a definitions section, and paragraph 74.4(i)(1) provides only illustrations of control, so neither of these provisions imposes any additional requirements upon an applicant.  Thus, to the extent that the VA relied on these sections as an independent basis for denying Plaintiff's application, it erred in doing so.  Similarly, the VA appears to cite the issue of negative control as a reason why Plaintiff fails to establish the requirements of section 74.4(f).  (GMIG-535.)  Specifically, the VA concludes that Plaintiff did not satisfy the control requirements of subsection (f) because paragraph (f)(2)(i) states: "Provisions for the establishment of a quorum cannot permit non-veteran directors to control the board of directors, directly or indirectly."  38 C.F.R. § 74.4(f)(2)(i).  Although this paragraph appears to prohibit the application of negative control by a non-veteran, paragraph (f)(2) by its own terms does not apply here, since Plaintiff has satisfied paragraph (f)(1).

The VA did not cite section 74.4(g) anywhere in its denial of Plaintiff's application.  While paragraph (f) requires all corporate applicants to demonstrate a certain amount of veteran control, paragraph (g) imposes an additional, distinct requirement upon applicants that have a non-veteran involved in the company's management.  *See* 38 C.F.R. 74.4(g).  Interpreting paragraph (g) as Plaintiff suggests—that is, as somehow subordinate to paragraph (f)—would render the provision superfluous whenever paragraph (f) is satisfied.  It is the Court's "duty to give effect, where possible, to every word of a statute."  *Duncan v. Walker*, 533 U.S. 167, 174 (2001); *accord Metoyer v. Chassman*, 504 F.3d 919, 946 (9th Cir. 2007) ("It is . . . a 'cardinal principle of statutory construction' that we must 'give effect, if possible, to every clause and word of a statute.'  We must be 'reluctant to treat statutory terms as surplusage.'" (quoting *Duncan*, 533 U.S. at 174) (internal citations and modifications omitted)); *US W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1053 (9th Cir. 2000) (where two provisions "were enacted at the same time and form part of the same Act, the duty to harmonize them is particularly acute.").

1    Thus, 74.4(f) sets a floor for the level of control that a veteran must have,

2    whereas 74.4(g) establishes a ceiling on how much control a non-veteran may have.

3    In fact, paragraph (g) imposes largely the same requirement upon applicants as

4    paragraph (f)(2)(i) in the context of corporate applicants by stating that "no such

5    non-veteran [involved in the management of an applicant such as a stockholder or

6    director] . . . may (1) [e]xercise actual control or have the power to control the

7    applicant or participant."  38 C.F.R. § 74.4(g)(1).  Coupled with the illustration

8    provided in paragraph (i)(1), which demonstrates when non-veterans have the

9    "power to control," 74.4(g) prohibits non-veterans from having the ability to prevent

10   a quorum or block actions.  *Id.* §§ 74.4(g)(1), (i)(1).  Ms. Gonzales-McCaulley's role

11   as one of two directors clearly gives her the "power to control" as defined by these

12   sections.

13   The VA could therefore have denied Plaintiff's application simply by citing 38

14   C.F.R. § 74.4(g).  But it did not do so.  And this Court is limited in its review to the

15   actual basis provided by the agency.  Nevertheless, although a court "may not supply

16   a reasoned basis for the agency's action that the agency itself has not given," it may

17   "uphold a decision of less than ideal clarity if the agency's path may reasonably be

18   discerned."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*

19   *Co.*, 463 U.S. 29, 43 (1983) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196

20   (1947); *Bowman Transp. Inc. v. Ark.-Best Freight Sys.*, 419 U.S. 281, 286 (1974));

21   *cf. Humane Soc'y of U.S. v. Clinton*, 23 C.I.T. 127, 137 (Ct. Int'l Trade 1999) ("A

22   sole reason can be sufficient to uphold the Secretary's decision provided he

23   considered the relevant factors and did not make a clear error of judgment."), *aff'd*,

24   236 F.3d 1320 (Fed. Cir. 2001).  The VA's denial of Plaintiff's application clearly

25   stemmed from its conclusion that Ms. Gonzales-McCaulley had the power to

26   exercise negative control over GMIG with her ability to prevent a quorum.  The

27   possession of this power by a non-veteran involved in the management of a company

28   rightfully excludes applicants both under paragraph (f)(2)—which only applies to

11

applicants who failed to satisfy paragraph (f)(1)—and under paragraph (g), which applies to all corporate applicants.  The VA's flaw in reasoning therefore amounts to a citation of the wrong subsection of its regulations.

While the VA's reasoning is confusing and at times appears to misstate the law, the Court finds that its "path" of reasoning is sound.  *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.  Ms. Gonzales-McCaulley possessed the power to exert negative control over GMIG due to her role as one of two directors on GMIG's board and the quorum requirement outlined in GMIG's bylaws.  The VA relied on this finding in denying Plaintiff's application.  As a result, the Court determines that the VA's actions were not arbitrary, capricious, or an abuse of its discretion.

Judgment is for Defendant.


Dated:  June 30, 2014

_____
Beverly Reid O'Connell
United States District Judge